UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EUGENE FLINN,<br>          Plaintiff<br><br>V.<br><br>MINNESOTA LIFE INSURANCE<br>COMPANY, SECURIAN LIFE INSURANCE<br>COMPANY, AND SECURIAN FINANCIAL<br>GROUP, INC.,<br>          Minnesota Life | **CIVIL ACTION NO.**<br>**1:18-CV-10868-WGY** |

## <u>MINNESOTA LIFE'S COMBINED OPPOSITION TO PLAINTIFF'S MOTION TO REMAND AND REPLY TO PLAINTIFF'S OPPOSITION TO MINNESOTA LIFE'S MOTION TO DISMISS</u>

Minnesota Life Insurance Company ("Minnesota Life"), Securian Life Insurance

Company, and Securian Financial Group, Inc. (collectively, "Defendants")[1], submit this

combined Opposition to Plaintiff's Motion to Remand and Reply to Plaintiff's Opposition to

Defendants' Motion to Dismiss.  As argued throughout this memorandum and in Defendants'

prior pleadings, this case is governed by the Employee Retirement Income Security Act, 29

U.S.C. s. 1001, et seq. ("ERISA") because Plaintiff, as his late wife's next-of-kin, seeks re-

issuance of payment of his late wife's employer-sponsored group life insurance benefit.  See

Compl. ¶¶102-104 (admitting that "Plaintiff is the beneficiary of the Minnesota policy" obtained

by his wife through her employer's benefits plan); Plaintiff's Superior Court Civil Action Cover

Sheet, at p. 28 of State Court Record, asserting damages of $275,277.77, i.e. the face value of his

late wife's group life insurance benefit).  Plaintiff's claim for re-issuance of ERISA benefits

---

[1]     Plaintiff admits that Securian Life Insurance Company and Securian Financial Group are corporate parents of
Minnesota Life, and are defendants here only because of their corporate relationship to Minnesota Life.  Compl.
¶¶3-9.

therefore "relates to" an ERISA benefits plan such that ERISA preempts each of the eighteen state law counts contained in Plaintiff's Complaint.  See, e.g., <u>Zipperer v. Raytheon Co., Inc.,</u> 493 F.3d 53-54 (1st Cir. 2007) (court looks to the "real nature of plaintiff's claims to determine whether state law claims are preempted).  While Plaintiff expends much effort trying to explain how his late wife's ERISA benefits plan and the Minnesota Life insurance policy at issue is somehow unrelated to this lawsuit, he cannot explain away the fact that the only relationship between himself and Defendants is that created by his claim for death benefits under his late wife's employer-sponsored benefits plan.  Accordingly, where the claim at issue in this case is governed by ERISA, this Court should deny Plaintiff's Cross Motion to Remand (Document #16) and grant Minnesota Life' Motion to Dismiss (Document #8).

## I.     PROCEDURAL HISTORY

Plaintiff initially filed this suit in Middlesex Superior Court on March 29, 2018.  Plaintiff served Defendants through their statutory agents on or about April 13, 2018.  Defendants removed this suit to the United States District Court on May 3, 2018 and filed their Motion to Dismiss on May 10, 2018.  Plaintiff filed his Memorandum in Support of His Opposition to Defendants' Motion to Dismiss, and His Cross Motion to Remand, docket #15, on June 1, 2018 ("Plaintiff's Memorandum").  This memorandum is Defendants' Reply to Plaintiff's Opposition and Opposition to Plaintiff's Cross-Motion.

## II.     BRIEF HISTORY OF PLAINTIFF'S CLAIM FOR BENEFITS

A full recitation of the underlying facts relevant to Defendants' arguments in support of dismissal and in opposition to remand are set forth in greater detail in Defendants' Memorandum In Support of Their Motion to Dismiss, Document #9, at p. 2.  For purposes of this memorandum, the salient facts are that Plaintiff's wife, Joyce Flinn ("Ms. Flinn"), was a Fidelity

Investments, Inc. employee at the time of her death.  Compl. ¶29.  Among her employer-sponsored benefits was a group life insurance benefit funded by a Minnesota Life insurance policy in the face amount of $250,000 (the "Policy").  Compl.¶30-31.  Although Ms. Flinn did not name a beneficiary for her death benefit the Policy, the Policy provides that where no beneficiary is named, Minnesota Life will pay the benefits to the certificate holder's lawful living spouse. Exhibit C to Plaintiff's Memorandum, at p.10; Compl. ¶¶42-43.  Ms. Flinn's sister (i.e. Plaintiff's sister-in-law), Joan Oliveira ("Ms. Oliveira"), who was then a Massachusetts-licensed attorney, submitted to Minnesota Life a letter of representation in which she purported to represent both Plaintiff and Ms. Flinn's estate.  Compl. ¶41.  Ms. Oliveira also indicated that she was Plaintiff's attorney-in-fact and enclosed a copy of an April 1, 2009 Durable Power of Attorney signed by Plaintiff.  On September 30, 2011, Ms. Oliveira sent a Preference Beneficiary Statement signed by Plaintiff which directed the check payable to Plaintiff be sent to Attorney Joan Oliveira.  Compl. ¶¶53, 56, 58.  After completing the claims process, Minnesota Life issued a $275,277.77 check payable to Plaintiff, care of Ms. Oliveira, representing the $250,000 life insurance Policy value plus accrued interest.  Compl. ¶¶58-59.  Ms. Oliveira deposited the check issued to Plaintiff and allegedly did not distribute the proceeds to him.  Compl. ¶¶75-76.

**III.   WHERE PLAINTIFF SEEKS PAYMENT OF AN EMPLOYER-SPONSORED GROUP LIFE INSURANCE BENEFIT, THIS CLAIM IS GOVERNED BY ERISA SUCH THAT STATE LAW CLAIMS ARE PREEMPTED AND REMAND TO STATE COURT IS NOT WARRANTED.**

a.     <u>Plaintiff's Claims 'Relate To' An ERISA Plan</u>

Plaintiff's principal contention both in support of remand and in opposition to dismissal is that he has "plead, in detail, specific facts giving rise to only state common [law] causes of action, without mentioning ERISA, or invoking analysis or dissection of the underlying plan." Plaintiff's Memorandum, at p. 7.  Plaintiff's admission that he is deliberately avoiding reference

to his underlying ERISA claim is fatal to his state law claims because the First Circuit has long held that, when deciding whether plaintiff's state law claims are preempted because they conflict with ERISA, courts must "look beyond the face of the complaint to determine whether the real nature of the claim is federal, regardless of plaintiff's state law characterization." Danca v. Private Health Care Systems, Inc., 185 F.3d 1, 5 (1st Cir. 1999) (internal citation and alteration omitted) (explaining "complete preemption" under ERISA); see also Zipperer v. Raytheon Co., Inc., 493 F.3d 50, 53-54 (1st Cir. 2007) (same).

In Danca, the First Circuit affirmed the trial court's determinations that (1) removal of the ERISA benefit claims was proper and (2) that plaintiff's state law claims were preempted.  The court explained that "state law tort suits that allege the improper processing of a claim for benefits under an ERISA-covered plan . . . fall within the scope of [ERISA's civil enforcement provisions, found at 29 U.S.C. §1132(a)].  Danca, 185 F.3d at 5.  The court further explained: "what matters, in our view, is that the conduct was indisputably part of the process used to assess a participant's claim for a benefit payment under the plan."  Id. at 6.  See also Vartanian v. Monsanto Co., 14 F.3d 697, 700 (1st Cir. 1994) (observing that state law claims are preempted when the existence of an ERISA plan is "inseparably connected to any determination of liability"); Spalding v. Reliance Standard Life Ins. Co., 835 F. Supp. 23, 29 (D.Mass. 1993) (finding claims arising under Massachusetts law brought by spousal beneficiary against group life insurance provider preempted by ERISA; characterizing as "obvious" that plaintiff's claim for ERISA plan benefits "directly affects and concerns the administration of death benefits under the plan.")

Here, as to the basis for his claims against Minnesota Life, plaintiff recites a litany of interactions between Minnesota Life and Ms. Oliveira during the administration of Plaintiff's

claim for Ms. Flinn's ERISA plan benefits.  For example, Plaintiff faults Minnesota Life for

dealing exclusively with Ms. Oliveira, whom Minnesota Life believed was Mr. Flinn's attorney,

claiming her instructions for payment "highly suspicious."  Plaintiff's Memorandum at p. 4.

Plaintiff faults Minnesota Life for honoring what is now purported to be a forged power of

attorney and for sending payment of Ms. Flinn's life insurance proceeds to Mr. Flinn, care of Ms.

Oliveira.  Id.  Plaintiff also faults Minnesota Life for sending the check for Ms. Flinn's death

benefit under the Policy (which was payable only to him) [2] to Ms. Oliveira despite the power of

attorney's prohibition on the attorney's self-dealing.  Id.  Plaintiff's lengthy recitation faulting

the manner in which Minnesota Life administered Plaintiff's claim for the death benefits under

the Policy makes clear that "the real nature of his claim" is the manner in which Minnesota Life

administered and paid to him the ERISA plan benefits.  In this case, the conduct at issue is

"indisputably part of the process used to assess" the benefit claim.  Danca, 185 F.3d at 6.  The

flaw in Plaintiff's attempt to omit mention of the ERISA plan is readily apparent: if reference to

the ERISA plan or the Policy is not necessary, how will this Court (a) find the existence of a

contract between the parties; (b) determine Plaintiff's entitlement to benefits, particularly where

Ms. Flinn did not name a beneficiary for her group life insurance benefits; (c) determine the

extent of Minnesota Life's obligations under the contract; or (d) decide whether Minnesota Life

breached any of its duties under the contract, all of which are necessary findings to decide his

breach of contract claims?  See also Zipperer, 493 F.3d at 55 ("in our view the district court

correctly concluded that Zipperer's claims only exist by virtue of [defendant's] status as an

ERISA employer and its administration of the ERISA plan at issue.").  Because he seeks

---

[2]   Plaintiff's assertion at p. 4 of Plaintiff's Memorandum that Minnesota Life "issu[ed] monies directly to [Ms. Oliveira]" ignores the simple fact that the check Minnesota Life issued for Ms. Flinn's death benefits under the Policy was made payable to "Eugene L. Flinn" and was addressed to "Eugene L. Flinn c/o Joan Oliveira, 250 Commercial St. Ste 3018, Manchester, NH 03101."   The check was addressed to and payable only to Plaintiff, Eugene Flinn, as beneficiary of Ms. Flinn's ERISA-plan proceeds.

payment of death benefits under the Policy, Plaintiff's claims are related to an ERISA plan and as such his state law claims are preempted, and remand to state court is not warranted.

(i)    <u>The Minnesota Life Policy Is Not Tangential To The Allegations In the Complaint.</u>

In his attempt to distinguish this lawsuit from Ms. Flinn's ERISA plan and the Policy, Plaintiff appears to distance his claim from recovery of ERISA plan benefits: "In fact, the Complaint only references the Fidelity Profit Sharing Plan[3] for factual context, since the ERISA plan was irrelevant to the Plaintiff's harm."  Plaintiff's Memorandum at p. 5; see also Plaintiff's Memorandum at p. 10 ("the fact that an ERISA plan exists, is completely tangential to the allegations.").  It then falls to Plaintiff to explain what relationship exists between Minnesota Life and himself other than that created by his status as Ms. Flinn's spouse and beneficiary under the Policy.  See <u>Spinal Imaging, Inc. v. Aetna Health Management LLC</u>, 2014 WL 1278012 at *7, n.8 (D.Mass. March 25, 2014) (observing that plaintiffs "have no basis for a claim" where plaintiffs denied they were seeking recovery of ERISA benefits and where defendant's only obligation to pay plaintiff arose from the terms of an ERISA plan); <u>Zipperer</u>, 493 F.3d at 55 (state law claim for benefits were preempted because right to benefits exist only because of defendant's ERISA plan obligations).

Accepting as true that Plaintiff is not seeking payment of ERISA benefits from Minnesota Life, then this suit must be dismissed because he has alleged no other relationship between himself and any of the Defendants.  Alternatively, Plaintiff must necessarily concede the obvious fact that he is seeking payment of death benefits under the Policy which are available

---

[3]    FMR LLCs Profit Sharing Plan, attached to Plaintiff's Memorandum as Exhibit A, is not at issue in this lawsuit. Any statement within this Profit Sharing Plan as to the discretion vested in FMR LLC as to the operation of its retirement savings plan is utterly irrelevant to the present litigation.  The profit sharing plan does not provide the life insurance benefit at issue in this case.  In fact, the only reference to life insurance within Plaintiff's Exhibit A is at Article 2.15(b), under the definition of "Compensation," in which life insurance is specifically excluded from the definition of "Compensation" under the Profit Sharing Plan.

to him solely because of his status as Ms. Flinn's spouse, in which case (1) removal was appropriate and (2) his state law claims are preempted.

      b.      <u>Plaintiff's Suit Is An Alternative Remedy For ERISA Benefits</u>

Plaintiff's next contention is that this suit is not an alternative enforcement mechanism to obtain ERISA benefits. Plaintiff's Memorandum at p. 10-11. Plaintiff asserts that his claim for death benefits under the Policy has nothing to do with the underlying ERISA plan "because the ERISA plan is not a critical fact of the state law causes of action, which sound in tort, contract and consumer protection." <u>Id.</u> at 11. Plaintiff's requested relief of $275,277.77 belies his contentions as to the irrelevance of the ERISA plan and the Policy to this lawsuit.

      (i)      <u>Plaintiff's Requested Relief Is For The Exact Amount of Benefits Owed Under Ms. Flinn's Group Life Insurance Policy</u>

Even if this Court were to credit Plaintiff's attempt to avoid saying "ERISA" in his Complaint, it must take notice of the fact that Plaintiff's claimed damages of $275,277.77 matches exactly the face amount of the check previously issued to him following administration of his claim. See Plaintiff's Superior Court Civil Action Cover Sheet; Compl. ¶199 (asserting that Plaintiff was defrauded of $275,277.77 by Ms. Oliveira). The identity between the value of the death benefits under the Policy and Plaintiff's claimed damages is not a coincidence; instead, it is conclusive evidence that Plaintiff's lawsuit is one for benefits to which he was entitled solely because of Ms. Flinn's status as a certificate holder of the Policy. Because his requested relief is simply the payment made to him under the Policy (but under the guise of state law causes of action), Plaintiff's suit is an attempt to obtain the same relief available under ERISA but under an alternative theory. Plaintiff's motion to remand should therefore be denied, and all state law claims dismissed. See <u>Danca v. Private Health Care Systems, Inc.</u>, 185 F.3d at 6 (any state-law based attack on the claims determination process is an alternative enforcement mechanism to

ERISA because "all suits brought by beneficiaries or participants asserting improper processing of claims under ERISA-regulated plans should be treated as federal questions governed by [ERISA].")

       c.    <u>Minnesota Life Is An ERISA Plan Fiduciary</u>

Plaintiff's contention that Minnesota Life was not ERISA plan fiduciary and therefore cannot be sued under an ERISA cause of action is unsupported by the materials and authorities cited in Plaintiff's Memorandum.  In determining whether an entity is a plan fiduciary, the court must employ a functional scrutiny of that entity's duties with respect to the ERISA plan.  See <u>Beddall v. State Street Bank and Trust Co.</u>, 137 F.3d 12, 18 (1st Cir. 1998) (explaining determination of ERISA "fiduciary" and "functional fiduciary" status), citing 29 U.S.C. §1002(21)(A).  As described below, Minnesota Life was a plan fiduciary because it was the claim administrator with a fiduciary duty to administer benefit claims in accordance with ERISA and the terms of Fidelity Investment's plan.  See 29 U.S.C. §1002(16)(A)(i) (defining a claim "administrator" to include "the person specifically so designated by the terms of the instrument under which the plan is operated."); 29 U.S.C. §1104(a)(1) (explaining that an ERISA fiduciary must exercise diligence and care, and administer the plan according to the plan documents).

First, Plaintiff's contention that Minnesota Life cannot be an ERISA fiduciary simply because it is neither the plan sponsor nor the ERISA plan itself is contrary to the relevant ERISA provision, 29 U.S.C. §1002(21)(A):

> Except as otherwise provided in subparagraph (B), a person is a fiduciary with respect to a plan to the extent
>
> (i)   he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets,
>
> …

(iii)  he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 1105(c)(1)(B) of this title.

The relevant statutory definition of a fiduciary does not mention "plan sponsor" much less limit the definition of a fiduciary to a predefined label.  Instead, as instructed in <u>Beddall</u> and other controlling appellate decisions, courts are obligated to employ a functional analysis of an entity's relationship to the ERISA plan or policy.  Here, the Policy gives Minnesota Life the authority and discretion to determine what information is necessary to administer a benefits claim, including determining who is eligible for insurance under the Policy (Exhibit C to Plaintiff's Memorandum, at p. 7); the amount of the death benefit (<u>Id.</u> at p. 9); to whom the death benefit will be paid (<u>Id.</u> at p. 10); and when the death benefit will be paid (<u>Id.</u>).  Importantly, the Policy provides that Minnesota Life "will pay the death benefit immediately upon receipt at our home office of written proof satisfactory to us that the insured died while insured under the policy."  (<u>Id.</u>).  Whether a death benefit is paid falls within the discretion of Minnesota Life.

That the Policy requires Fidelity Investments, as plan sponsor, to maintain records of information necessary for Minnesota Life to administer the life insurance benefit does not mean that Minnesota Life deferred to Fidelity Investment's directives while administering Plaintiff's claim. See Plaintiff's Memorandum at p. 14.  That Fidelity Investments is required to maintain records of its own employees and provide them to Minnesota Life at any reasonable time to enable it to administer life insurance benefit claim disproves Plaintiff's assertion that Minnesota Life had no discretion in the claim decision process.  The Policy further does not in any way support Plaintiff's contention that Fidelity Investments could unilaterally direct claim decisions or that Minnesota Life was "tasked with the ministerial function" of paying plan money after receiving instructions from Fidelity Investments.  By contrast, in <u>Santana v. Deluxe Corp.</u>, 920 F.Supp. 249, 254 (D.Mass. 1996) (cited in Plaintiff's Memorandum at p. 13-14), the insurer was

deemed not to be a plan fiduciary because it "merely rendered advice" regarding plan benefits, advised the plan as to current laws affecting benefits, and made recommendations as to cost-effective services, none of which vested the company with discretionary authority.  <u>Id.</u> at 256.

Second, Plaintiff makes the unsupported assertion that "Minnesota was directed to pay benefits by Fidelity, evidencing that it retained no discretionary control."  Plaintiff's Memorandum at p. 14, citing Exhibit B to Plaintiff's Memorandum.  Plaintiff's Exhibit B appears to be an email chain among Minnesota Life employees indicating that Fidelity Investments had submitted a Notice of Death form on May 29, 2009, but that no further forms had been exchanged as of October 2009.  Exhibit B contains no statements from Fidelity Investments personnel, and Plaintiff cites to no plan or Policy language indicating that Fidelity Investments' submission of a notice of death amounts to a directive to pay benefits (even assuming the plan or Policy grants Fidelity Investments such authority).  Indeed, the extent of the correspondence between Minnesota Life and Ms. Oliveira, from October 2009 to October 2011, indicates that Fidelity Investments did not unilaterally direct Minnesota Life to pay Ms. Flinn's death benefit under the Policy contemporaneously with Exhibit B in October 2009.  See Compl. ¶57 (noting the claims process took two years).

Third, Plaintiff erroneously places weight on the fact that the Policy describes Fidelity Investments as the "plan sponsor."  Plaintiff's Memorandum at 13, citing Exhibit C to Plaintiff's Memorandum, at p. 4.  ERISA defines a "plan sponsor" as either the employer, employee organization, or group representatives who establish or maintain the plan.  29 U.S.C. § 1002(16)(B).  By definition, every ERISA plan has a "plan sponsor."  <u>Id.</u>  Such designation, alone, has no bearing on the allocation of responsibilities between Minnesota Life and Fidelity Investments.  See <u>Vander Luitgaren v. Sun Life Assur. Co. of Canada</u>, 765 F.3d 59, 64 (1st Cir.

2014) ("[P]lan sponsors have considerable latitude to set the terms of a plan, including terms that spell out how benefits are to be paid"; observing that insurer did not violate fiduciary duties by choosing to pay benefits in a manner not prohibited by law).

(i)   The Woodworker's Supply Decision Supports Minnesota Life'
        Position for ERISA Preemption

Plaintiff's reliance on Woodworker's Supply, Inc. v. Principal Mut'l Life Ins. Co., 170 F.3d 985 (10th Cir. 1999) for his contention that Minnesota Life is a third party insurer rather than ERISA plan fiduciary is unfounded.  See Plaintiff's Memorandum at p. 14.  The factual differences between the present matter and Woodworker's Supply, Inc. make clear that Minnesota Life here is an ERISA plan fiduciary.

In Woodworker's Supply, Inc., the ERISA plan sponsor ("Woodworker") sued Principal Mutual, the insurance company which had formerly provided to Woodworker certain employee insurance benefits.  During an open bidding process, Principal Mutual submitted a bid for Woodworker's insurance benefits that was significantly below its competitors' bids.  It was so low that the insurance broker requested an upward-revised bid due to the risk of underfunding the plan, which could result in large future rate increases.  Id. at 988.  The broker then recommended, and Woodworker accepted, Principal Mutual's revised bid to provide employee benefits.  Id.  Woodworker was unaware that the plan underwriter had doubts about the adequacy of the rates in the Principal Mutual's bid, which doubts the Principal Mutual sales representative dismissed and did not disclose to Woodworker.  Id.  When the plan came up for renewal, Woodworker first learned of the underwriter's doubts as to the prior year plan's adequacy.  Id. at 989.  Woodworker also learned that Principal Mutual failed to disclose that the method it used to calculate rates deviated from industry norms so as to make subsequent large rate increases and additional surcharges likely.  Such knowledge would have caused Woodworker to choose a

different plan.  Id.  When Principal Mutual imposed the surcharges and rate increases upon

renewal, Woodworker refused to pay them and ultimately brought suit alleging fraudulent

inducement and violations of the state unfair practices statute.  Id.

      Under these facts, the Woodworker's Supply, Inc. court rejected Principal Mutual's

ERISA preemption defense, holding that Woodworker "was suing Principal Mutual with respect

to its pre-plan activity in its role as a seller of insurance, not as an administrator of an employee

benefits plan."  Id. at 991.  The court therefore concluded that Principal Mutual could not have

been among the principal ERISA entities (i.e. employer, plan sponsor, beneficiary, or plan

fiduciary) when it submitted its fraudulent bid to Woodworker: the claim "is best characterized

as a claim between an employer and an outside party not affecting relations between ERISA

entities as such.  That Principal Mutual may have later acted as a plan fiduciary does not alter its

pre-plan status."  Id.  Speaking to a situation analogous to the present lawsuit, the court stated:

where a plan beneficiary sues to recover plan benefits, such dispute concerns "the allocation of

benefits under an employee benefits plan . . . and so such claims are usually preempted."  Id.

      Here, Plaintiff's Complaint is premised solely on his status a beneficiary under the Policy

and seeks payment of benefits on account of Minnesota Life's allegedly improper administration

of his claim.  See, e.g., Count I of Plaintiff's Complaint, ¶¶83-90 (alleging negligent claim

handling and failure to pay the Policy death benefit to Plaintiff).  This is exactly the scenario that

the Woodworker's Supply, Inc. court stated was "usually preempted."  Woodworker's Supply,

Inc., 170 F.3d at 991.  The Complaint is completely devoid of any suggestion that Defendants

had any obligation to Plaintiff outside that created by Minnesota Life's involvement in Fidelity

Investment's group life insurance benefit or Plaintiff's status as Ms. Flinn's beneficiary under the

Policy.  The <u>Woodworker's Supply, Inc.</u> decision therefore supports Defendants' arguments, and undermines Plaintiff's.[4]

          d.      <u>It Is Irrelevant That The Parties Do Not Dispute The Policy's Face Value</u>

Plaintiff contends that reference to the ERISA plan is unnecessary because the amount of his damages is the face value of the policy, about which there is no dispute.  See Plaintiff's Memorandum at p. 11, citing <u>Leyland v. Plymouth & Brockton Street Ry. Co.</u>, 44 Mass. App. Ct. 427, 430-431 (1998).  In <u>Leyland</u>, a widow sued her husband's former employer[5] for payment of her husband's group life insurance benefit.  The life insurance company denied payment because, in accordance with the employer's instruction, the husband was deemed no longer covered at the time of his death because he was retired.  <u>Id.</u> at 428.  The jury found that the husband did not terminate his employment and that employer's instruction to cancel his group life insurance was wrong and unjustified.  <u>Id.</u> at 430.  Plan interpretation was unnecessary because the sole issue for the jury was whether employer's directive to cancel husband's insurance was proper; there was no assertion that the claim was improperly handled.  <u>Id.</u> at 430.

In contrast to the facts and claims in <u>Leyland</u>, Plaintiff here contests the manner in which Minnesota Life administered his claim for life insurance benefits.  See, e.g., Compl. at Counts I, II & III (alleging negligence in Defendants' handling of Plaintiff's claim for benefits); <u>Id.</u> at Counts IV, V & VI (alleging Defendants breached the life insurance contract with Plaintiff); <u>Id.</u> at Counts XVI, XVII & XVIII (alleging breach of fiduciary duty by Defendants).  Thus the

---

[4]    Plaintiff's reliance on <u>Miara v. First Allmerica Financial Life Ins. Co.</u> is similarly unpersuasive.  See Plaintiff's Memorandum at pp. 7, 11, 13, 15, 16.  In <u>Miara</u>, the issue before the court was "whether ERISA preempts state law claims against an insurer . . . stemming from misrepresentations made by the insurance agent . . . prior to the establishment of the employee benefit plan in question."  <u>Miara v. First Allmerica Financial Life Ins. Co.</u>, 329 F. Supp. 2d. 20, 53 (D.Mass. 2005).  Here, Plaintiff makes no allegations that he had any contact with any of the Defendants prior to the administration of his claim for death benefits under the Policy.

[5]    The group life insurance company was also sued, but obtained dismissal with prejudice.  The court also observed that Minnesota Life did not timely remove the matter and so jurisdiction in Superior Court was appropriate.  <u>Leyland</u>, 44 Mass. App. Ct. at 428-429.

nature of Plaintiff's state law causes of action requires this Court reference the Policy in order to identify what duties and processes Minnesota Life was required to follow in the course of administering Plaintiff's claim for death benefits under the Policy.  See Hampers v. W.R. Grace & Co., Inc., 202 F.3d 44, 53 (1st Cir. 2000) ("We have consistently held that a cause of action 'relates to' an ERISA plan when a court must evaluate or interpret the terms of the ERISA-regulated plan to determine liability under the state cause of action.") (also cited in Plaintiff's Memorandum at p. 8, 9).

## IV.   CONCLUSION

For the reasons stated in this Memorandum and in Defendants' Memorandum In Support Of Their Motion To Dismiss (Document #9), Defendants request this Court:

(1) deny Plaintiff's Cross Motion to Remand (Document #16);

(2) grant Defendants' Motion To Dismiss (Document #8); and

(3) award such other relief as this Court deems appropriate.

MINNESOTA LIFE INSURANCE
COMPANY, SECURIAN LIFE
INSURANCE COMPANY, AND
SECURIAN FINANCIAL GROUP, INC.

By its attorneys,


/s/ Kevin Kam
Joan O. Vorster, Esq., BBO #550375
Kevin Kam, Esq., BBO #685846
Mirick, O'Connell, DeMallie & Lougee, LLP
100 Front Street
Worcester, MA 01608-1477
Phone: (508) 791-8500
Fax:    (508) 791-8502

Dated: June 27, 2018

<u>CERTIFICATE OF SERVICE</u>

I, Kevin Kam, hereby certify that this document(s), filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on June 27, 2018.

 /s/ Kevin Kam

Kevin Kam, Esq.